UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MABEL BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:05-CV-27 PS |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the court for judicial review of a final decision of Respondent Commissioner of Social Security Administration (the "SSA") denying Petitioner Mabel Barnes' application for Disability Insurance Benefits ("DIB"). Barnes raises two arguments in support of her appeal. The first is that the ALJ failed to adequately support his opinion that the petitioner's mental impairment is not severe. The second is that the ALJ's vocational conclusions were erroneous due to an inadequate definition of the petitioner's residual functional capacity ("RFC"). Because we find that the ALJ provided ample support for his conclusions about the petitioner's mental impairments and adequately defined the petitioner's RFC, the decision of the ALJ is affirmed.

**I.  FACTUAL BACKGROUND**

**A.    Procedural Background**

Barnes filed her current application for DIB on May 6, 2002. This application was denied by the SSA, both initially and upon reconsideration. On April 15, 2003, Barnes appealed the denial of her application. Barnes' case was heard by an ALJ, who denied her claim on the

grounds that Barnes remains capable of performing past administrative work.[1]  On August 17, 2004 Barnes sought review of the ALJ's decision, which the Appeals Council denied. The ALJ's decision thus became the final decision of the Commissioner.  Barnes now seeks review of that Commissioner's decision.

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

> 1. The claimant met the nondisability requirements for a period of disability and Disability Insurance benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2004.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of her disability.
>
> 3. The claimant has a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).
>
> 4. The claimant's medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The claimant's allegations regarding her limitations are credible.
>
> 6. The claimant has the following residual functional capacity: she can lift a maximum of 10 pounds at a time, and occasionally carry items such as docket files, small tools and ledgers.  In addition, she can occasionally stand and walk.
>
> 7. The claimant's former jobs as a data entry clerk and supervisor, an administrator and a secretary do not require duties beyond the claimant's exertional capabilities.

---

[1]We note that at the hearing, Barnes' counsel requested that the ALJ reopen Barnes' prior DIB application that was concluded on April 3, 2001.  The ALJ denied that request.  Barnes does not contend that the failure to reopen her prior application was error.

>  8.  The claimant can perform her past relevant work as a data entry clerk and supervisor, and administrator and a secretary.
>
>  9.  The claimant is not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 25).

Upon these findings, the ALJ determined that Barnes is not entitled to disability insurance benefits. The ALJ based the denial of Barnes' claim on his conclusion that she is capable of performing past work. Upon full review of the record in this cause, we affirm.

**B.  Factual Background**

Barnes is a 57-year-old woman with a high school education and two years of college business courses. [Tr. 54]. She has worked in data entry for twenty-three years and also taught at a religious school. [Tr. 54-59]. Barnes claims that she has been disabled since September 1999. [Tr. 60]. Barnes claimed disability as a result of both physical and mental impairments. However, as Barnes' appeal centers on her claim that the ALJ failed to properly assess her mental disability, we focus on the evidence related to her alleged anxiety and/or depression and associated symptoms.

**1.  Treating Physician Testimony**

In support of her DIB application, Barnes submitted medical records from her treating physician, Dr. Olabode Oladeinde. [Tr. 656-700, 751-754, 776-784]. The records cover the period of visits from April 10, 2001 until December 11, 2002 as well as a single visit on July 31, 2003 and visits on March 10, 2004 and April 22, 2004. As the ALJ noted in his opinion, Barnes complains of anxiety only infrequently in the records. Upon review by this Court, we found that

3

Dr. Oladeinde recorded complaints relating to anxiety three times in the period from April 10, 2001 until December 11, 2002.[2]  However, we also note that the record contains numerous complaints of fatigue, dizziness, and heart palpitations. [Tr. 718-19, 733-34, 754, 758-59].

Barnes also submitted an opinion from Dr. Oladeinde dated June 27, 2003 in which he stated that Barnes could not perform fine manual manipulations and that she suffered from fatigue and depression as a result of her anxiety. [Tr. 702-704].  Dr. Oladeinde concluded that Barnes could sit or stand for less than an hour each day and, therefore, could not work full time – even in a sedentary job. [Tr. 702, 704].  Dr. Oladeinde also indicated that Barnes could not perform fine manipulation with her hands, but that Barnes could use her hands for simple grabbing, pushing and pulling, and repetitive motion tasks such as writing and typing. [Tr. 702].  Dr. Oladeinde also stated that Barnes' fatigue was so disabling as to prevent Barnes from working full time even in a sedentary position. [Tr. 704].  Dr. Oladeinde's report did not explain the basis for his findings regarding Barnes' fatigue, anxiety, panic, and inability to perform sedentary work.   In a supplemental report dated April 29, 2004, Dr. Oladeinde did explain that Barnes was unable to perform fine manipulation because of tremors in her hands caused by a state of perpetual tension and anxiety. [Tr. 777].

---

[2]References to anxiety or feelings of anxiousness can be found on notes of the following visits: August 31, 2001, November 26, 2001, August 8, 2002,

    **2.**    **Consulting Physicians**

Barnes was examined by a number of consultants with a variety of different results.[3] First, at the request of the State Agency, Dr. Zeitoun examined Barnes in July 2002. [Tr. 621]. He found that she had a slow gait due to obesity and was able to tandem walk but unable to walk heel toe. [Tr. 622]. He found that she could stoop but not squat, and that she had a normal heart rhythm without murmur or gallops. [Tr. 622]. He noted that she did not suffer from dyspnea or fatigue. [Tr. 622]. He also noted that Barnes was taking Xanax for anxiety, was using a C-pap to treat her sleep apnea, and wore TTS patches to treat her dizziness. [Tr. 621]. Barnes stated to Dr. Zeitoun that Xanax did help with her anxiety. [Tr. 621]. Dr. Zeitoun also noted that she was able to perform fine motor functions such as buttoning, zipping, and picking up coins. [Tr. 632].

Barnes was also referred to Dr. Fisher, Psy.D. by the Social Security Administration in August 2002. [Tr. 626]. Dr. Fisher conducted a clinical interview and a mental status examination. [Tr. 262]. During the interview, Barnes stated that she was referred to Dr. Hanna, a psychiatrist, in 2001. [*Id*.] Barnes attended only three of six approved visits because it was too expensive. She has not seen a psychiatrist since that time. [*Id*.]. Dr. Fisher concluded that Barnes suffered from Panic Disorder Without Agoraphobia and Anxiety Disorder, and he diagnosed her with a GAF score of fifty-five.[4] [Tr. 629]. Dr. Fisher further explained that

---

    [3]As noted above, the ALJ did not consider evidence submitted in support of Barnes's first application for DIB which was fully resolved in April 2001.

    [4] GAF measures an individual's overall level of psychological, social and occupational functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (rev. 4th ed. 2000). A GAF score of 51 to 60 is intended to identify "an individual with moderate symptoms...OR moderate difficulty in social, occupational, or school functioning." *Lockhart v. Jefferson Pilot Fin. Ins. Co.*, 314 F. Supp. 2d 797, 805 (D. Ill. 2004) (internal quotations and citations omitted).

Barnes appeared only mildly anxious, appearing to stiffen in her chair when doing certain exercises. [Tr. 629]. He also reported that she appeared comfortable during the interview and that while she did appear to have poor concentration, she denied feeling depressed and was able to complete memory activities with no difficulties [Tr. 628].

Dr. Gange, a State Agency psychologist, reviewed Barnes' medical records in August 2002. Dr. Gange determined that Barnes has an anxiety disorder, but that the disorder is not severe by Agency standards. [Tr. 648]. He further determined that her daily activities are unrestricted, but that she has mild difficulty in maintaining social functioning, concentration, persistence and pace. [Tr. 648]. Dr. Gange indicated in his report that Barnes also suffered from non-mental impairments that required a referral to another medical specialty. [Tr. 638]. Dr. Gange's opinion was reviewed and affirmed by Dr. Neville, another State Agency psychologist. [Tr. 638].

Finally, in July 2003 Dr. Carter provided a report on Barnes medical condition. Dr. Carter's report focused primarily on Barnes' physical condition, noting that Barnes suffered from a Class III heart disease. [Tr. 728]. Dr. Carter did not respond to a request to provide further evidence in support of his opinions.

### 3. Vocational Expert

Vocational expert Dr. Leonard Fisher (the "VE") testified at the April 20, 2004 hearing. The VE discussed Barnes' past employment and classified her positions from semi-skilled (cook, data entry operator) to skilled (secretary, teacher, administrator). He also noted that these positions required sedentary to medium exertion, specifically defining data entry operator and secretary as sedentary. [Tr. 85-86]. The VE testified that while Barnes could not perform her past

work with a fine manipulation restriction, she might be able to perform jobs such as office helper, parking lot cashier, mail sorter, or information clerk with light work restrictions. [Tr. 87]. He also testified that if limited to sedentary work and a simple two-step process, Barnes could not perform her past work, but would have a number of transferrable skills to other positions. [*Id*.].

      **4.**      **Other Evidence**

Barnes testified on her own behalf at the hearing with the ALJ on April 20, 2004. She discussed her anxiety, noting that it often manifested itself in the form of heart palpitations and difficulty breathing. [Tr. 65-66]. However, Barnes also testified that she had a "fantastic" memory [Tr. 77] and that she had no difficulties concentrating [Tr. 81-82]. Barnes specifically distanced herself from Dr. Fisher's conclusion that she had trouble concentrating. Instead, Barnes explained that "I don't like to do simple things, and he was giving me some simple things that . . . I was getting upset from it because it was so, it was so simple . . . I was very irritated because it was like, I'm not stupid, you know. I think that's, that's what it was." [Tr. 82]. Barnes did not mention fatigue or depression at all in her testimony.

## II. DISCUSSION

**A.**      **The DIB Benefits Analysis**

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

7

techniques." 42 U.S.C. §423(d)(3).  It is not enough for plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), *cert. denied*, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

There is a five step test to determine whether a claimant is disabled.  *Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987); 20 §§ C.F.R. 1450.  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1) Is the claimant presently unemployed?  (2) Is the claimant's impairment "severe"?  (3) Does the impairment meet or exceed one of a list of specific impairments?  (4) Is the claimant unable to perform his or her former occupation?  (5) Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988).  A claimant has the joint burdens of production and persuasion through at least step four, where the individual's RFC is determined.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); 20 C.F.R. §§ 404.1545, 416.945.

**B.     Standard of Review**

Section 205(g) of the Social Security Act limits the scope of judicial review of the Commissioner's final decision by providing that "any fact, if supported by substantial evidence,

8

shall be conclusive," and, thus, the court's power to modify, affirm, or reverse the decision of the Commission is restricted. 42 U.S.C. § 405(g). Accordingly, we review the Commissioner's decision to deny benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Rice v. Barnhart*, 384 F.3d 363, 368-69 (7th Cir. 2004); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Because the review of the ALJ's findings is deferential, we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez*, 336 F.3d at 539. As the Court stated in *Rice*, "while the ALJ must have built a logical bridge from the evidence to his conclusion, we will nonetheless give the opinion a commonsensical reading rather than nitpicking at it." *Rice*, 384 F.3d at 369 (internal citations and quotations omitted). Where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [SSA] (or on the [SSA's] designate, the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)(citations omitted).

**C.**     **Application to the Case**

In this case, Barnes disputes the ALJ's finding only as it relates to her mental and nonexertional capabilities. Although she does not specifically articulate which step of the ALJ's analysis she takes issue with, it appears from the argument that Barnes is contesting the ALJ's conclusions starting at step two of the analysis.

First, Barnes argues that the ALJ was mistaken in his determination that Barnes does not have a severe mental impairment at step two of the analysis. This determination would then

9

require the ALJ, at step three, to determine whether her mental impairment meets a listed impairment contained in the regulations. Barnes also argues that the ALJ inadequately defined her RFC at step four of the analysis. Specifically, she argues that the ALJ did not adequately take into account the effects of Barnes's mental impairments when he determined that she is capable of returning to past work. It appears, then, that Barnes asserts that at both steps two and four, the ALJ improperly underestimated the severity of her mental impairment.

### 1. The ALJ's Finding That Barnes' Mental Impairment Is Not Severe

We first review the ALJ's finding that Barnes' mental impairment was not severe. Barnes argues that the ALJ made three mistakes in his analysis. First, the ALJ improperly applied the treating physician rule by rejecting Dr. Olandeinde's uncontroverted opinion in favor of the opinion of Dr. Gange, the consulting state agency psychologist. Second, the ALJ based his conclusions on his own lay opinions. Third, the ALJ improperly based his conclusions on his own evaluation of Barnes's daily activities.

A wide variety of factors should be considered to determine the nature and severity of Barnes' symptoms. *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995); 20 C.F.R. § 404.1529(c)(3). These factors include:

> (I) [Her] daily activities; (ii) The location, duration, frequency, and intensity of [her] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication...taken to alleviate [her] pain or other symptoms; (v) Treatment, other than medication...received for relief of [her] pain or other symptoms; (vi) Any measures...used to relieve [her] pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). If the ALJ properly considered these factors and supported his determination with substantial evidence, then we will not overturn his decision that Barnes'

mental impairment was not severe.

### a.     Treating and Consulting Physician Evidence

The first issue before the Court is how much weight the ALJ should have properly afforded the opinion of Dr. Oladeinde, Barnes' treating physician.  As the Seventh Circuit recently discussed, the "treating physician rule" has been around for many years, but its utility is questionable at best.  *Hofslien v. Barnhart*, 2006 WL 469484, *1 (7th Cir. March 1, 2006).

The treating physician rule requires the ALJ to assign controlling weight to the medical opinion of a treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *Hofslien*, 2006 WL 469484 at *1; *Dixon v. Masssanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  The Seventh Circuit further explained that :

> if the [treating physician's opinion] is well supported and there is no contradictory evidence, there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it.  Equally obviously, once well-supported contradictory evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight.

*Hofslien*, 2006 WL 469484 at *1.  Well-supported contradictory evidence is not limited to other treating or examining medical opinions, but rather may include such information as the claimant's own description of her condition, the effect of medication on her condition, and the opinions of any state agency medical consultants.  *Schmidt v. Barnhart*, 395 F.3d 737, 745-746 (7th Cir. 2005); 20 § C.F.R. 404.1512(b).  As a result, "treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh" and the amount of weight that we should give it depends on the circumstances.  *Hofslien*, 2006 WL 469484 at *1-2.

Here, the ALJ relied on a number of legitimate factors when he rejected Dr. Oladeinde's

opinion. First, he noted that Barnes' more recent medical records (dating from 2003-2004) contain only one emergency room visit attributable to an anxiety reaction and that Barnes mentioned her panic attacks and/or general anxiety only infrequently during more recent visits. [Tr. 21].  Moreover, the ALJ noted that Barnes told Dr. Zeitoun that she takes Xanax for her panic attacks and that it helps her condition and noted that Barnes has not visited a mental health professional since 2001.  [Tr. 21, 23].

The ALJ decided that Dr. Oladeinde's report was inconsistent with other substantial evidence in the record. [Tr. 24].  For example, Dr. Oladeinde reported that Barnes suffered disabling fatigue secondary to depression. [*Id*.].  However, Barnes herself did not report that she suffered fatigue or depressions when asked about her disabilities at the hearing.  Moreover, Barnes' own testimony and reports of her symptoms were inconsistent with her current claims of memory and concentration problems and inability to sit for long periods. [Tr. 23].  Barnes told the ALJ that her memory is "fantastic" and reported that she did not have trouble concentrating or sitting. [*Id*.].

The ALJ also relied on the opinion of Dr. Gange, the state psychologist, in his rejection of Dr. Olandeinde's mental assessment.[5]  Dr. Gange concluded that, while Barnes does have mild difficulties in functioning and maintaining concentration and persistence, her impairments are

---

[5] Barnes also argues that the ALJ relied on Dr. Gange over the other state agency consultants, Drs. Unversaw, Brown, and Fisher.  As noted above, the ALJ properly avoided consideration of any evidence received in connection with or prior to the decision on Barnes' first request for DIB.  The reports of both Dr. Unversaw and Dr. Brown were issued prior to the SSA's ruling on Barnes's first request.  As to Dr. Fisher's timely report, Dr. Fisher diagnosed Barnes with panic and anxiety disorders.  However, he did not make conclusions as to whether Barnes' disorder is severe, and nowhere in his report does Dr. Fisher recommend that Barnes should be limited to simple tasks.  Accordingly, we do not see how the ALJ's acceptance of Dr. Gange's opinions is in conflict with Dr. Fisher's opinion.

not severe.

Thus, in rejecting the opinion of Dr. Oladeinde regarding the severity of Barnes' impairment, the ALJ considered a wide variety of legitimate factors.  This amounts to substantial evidence because a reasonable person could readily have arrived at the conclusion that the ALJ arrived at here. *Clifford,* 227 F.3d at 869.

      **b.**     **Lay Impressions**

Barnes also argues that the ALJ improperly "put himself in the position of a doctor" and improperly based his decision that Barnes' mental impairments were not severe on his own lay impressions.

An ALJ impermissibly "plays doctor" when he rejects treating medical opinions in the absence of any inconsistent evidence.  *Clifford v. Apfel*, 227 F.3d 863, 870-1 (7th Cir. 2000); *Rohan v. Carter*, 98 F.3d. 966, 970-1 (7th Cir. 1996).  However, the ALJ is not acting impermissibly if he identifies inconsistencies which substantiate his decision not to give controlling weight to a treating opinion.  20 C.F.R. § 404.1527(c); *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (stating that "medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence").

As previously discussed, the ALJ points to many reasons why he found Dr. Oladeinde's opinion to be inconsistent with other evidence in the record.  In  asserting that the ALJ was playing doctor, Barnes points to the dialogue between the ALJ and the vocational expert during the hearing.  The ALJ stated that Barnes impressed him as being "very smart."   However, there is no indication in the ALJ's opinion that he improperly used his own lay impression of the witness's intelligence to diagnose Barnes or to discredit medical evidence in the record.  The ALJ

13

in fact did not disagree with the medical evidence that Barnes has an anxiety disorder.  Rather, the ALJ evaluated the evidence of Barnes' impairments and agreed with Dr. Gange's assessment that Barnes' mental impairments were insufficient to qualify her as "disabled."  As previously discussed, the ALJ articulated a variety of reasons to substantiate his decision, none of which is the fact that Barnes struck him as intelligent.

Barnes also argues that her heart condition evidences the severity of her anxiety.  She argues that the ALJ improperly dismissed Dr. Carter's conclusion about Barnes' heart condition based on the ALJ's own lay opinion.  However, the ALJ clearly stated his reasons for dismissing Dr. Carter's opinion: 1) Dr. Carter's own failure to produce any medical evidence to support his opinion; 2) Dr. Wolfe's failure to find any cardiac problems; and 3) Barnes's normal EKGs.  It is within the province of the ALJ to evaluate medical evidence.  *Wolfe v. Shalala*, 997 F.2d 321, 326 (7th Cir. 1993).  The court will not reverse the ALJ's evaluation of conflicting medical evidence unless it is "patently wrong."  *Id*.  We find nothing patently wrong about the ALJ's analysis here, and therefore, affirm his decision.

      **c.**     **Barnes's Daily Activities**

Finally, with respect to Step 2, Barnes claims that the ALJ impermissibly based his conclusion about her capabilities on an evaluation of her daily activities.  However, the ALJ did not focus on her activities alone, but rather, properly considered them in combination with other testimony and evidence when determining what weight to give Barnes' own descriptions of her mental impairments.

When assessing an individual's credibility, an ALJ is not only permitted but also required to consider the claimant's daily activities.  *Rice v. Barnhart*, 384 F.3d 363, 371 (7th. Cir. 2004).

14

A court should reverse the ALJ's assessment of credibility only if it is "patently wrong." *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

Daily activities are also considered a legitimate factor in determining the nature and severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (reasoning that the ALJ should evaluate testimony regarding subjective symptoms in the context of the plaintiff's daily activities, duration, location and frequency of the symptoms, aggravating factors, medication, and other treatments). Discrepancies between this evidence and the plaintiff's own testimony may help to determine whether the plaintiff is exaggerating. *Sienkiewics v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005); *Powers v. Apfel*, 207 F.3d 431, 435-436 (7th Cir. 2000).

Nevertheless, Barnes argues that the ALJ impermissibly disregarded her claim of pervasive and severe dizziness as well as finding her to be less credible regarding her anxiety . In support, she relies on *Carradine v. Barnhart*. 360 F.3d 751 (7th Cir 2004). In that case, the plaintiff claimed that pain precluded her from working a normal week. *Id*. at 754. The court concluded that because the plaintiff did not claim to be in constant pain, the fact that she could sometimes engage in physical activities like walking did not undermine her claim that she was incapable of working normal business hours. *Id*. at 756. Contrary to Barnes' assertion, the court did not hold that the daily activities of the plaintiff were beyond consideration, it simply decided in that instance that the ALJ drew illogical conclusions based on the plaintiff's activities. *Id*.

In this case, the ALJ asserted that Barnes' daily activities were incompatible with "pervasive and severe" dizziness. This is a logical conclusion because severe and constant dizziness would be inconsistent with the wide range of daily activities performed by Barnes, especially driving.

15

As for Barnes' claims of anxiety, the ALJ did not heavily consider Barnes' daily activities in determining that her claims of severe anxiety were not credible.  Instead, he focused on her own testimony that she had a fantastic memory and can concentrate without difficulty as well has her report that Xanax has helped control her panic attacks and medical records demonstrating less frequent panic episodes.

Accordingly, the ALJ properly considered the evidence before him and determined that while Barnes did suffer from anxiety, her mental impairment was not severe.  We, therefore, move to the ALJ's analysis of Barnes's ability to perform work.

### 2. The Adequacy of the RFC Statement

Finally, Barnes argues that the ALJ did not properly assess her RFC because he failed to take into account her problems with fine motor manipulation, her fatigue, and her impaired concentration.  Barnes argues that had the ALJ properly considered her mental impairments and fine motor problems, he would have to accept the VE's testimony that there were no jobs available in the marketplace that would accommodate those disabilities.  However, as discussed above, there is substantial evidence in the record to support the ALJ's rejection of Barnes' mental impairments as well as her fine motor issues.  Accordingly, we affirm his decision.

An individual's RFC is an administrative assessment of  "what an individual can still do despite his or her limitations."  20 C.F.R. § 404.1545.  This decision is not a medical decision, it is a legal decision.  20 C.F.R. § 404.1527(e).  The assessment of Barnes' RFC is a decision reserved for the ALJ, and in making that decision, the ALJ may consider a variety of both medical and non-medical evidence.  *Diaz v. Chapter*, 55 F.3d 300, 306 (7th Cir. 1995) ("In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own

16

statement of what he or she is able or unable to do. . .   That is, the SSA need not accept only physicians' opinions.") (internal citations omitted);   20 C.F.R. § 404.1545(a)(3) ("We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you.").

In this case, the ALJ properly concluded that Barnes could perform a full range of sedentary work.  He noted that:

> she can lift a maximum of 10 pounds at a time, and occasionally carry items such as docket files, small tools and ledgers.  In addition, she can occasionally stand and walk . . . In addition, sedentary work can be performed despite occasional mild dizziness and/or mild diabetic neuropathy confined primarily to the lower extremities.

[Tr. 24].   In so finding, the ALJ specifically rejected concerns about Barnes' fine motor capabilities noting that Dr. Oladeinde's report indicated that Barnes can use her hands for grabbing, pushing and pulling, and repetitive motion tasks like typing and writing, and no other medical report indicates that Barnes has impaired fine motor skills.  The ALJ also noted Barnes' own testimony that she is able to button, zip, and pick up coins.   The record clearly supports these findings.

The ALJ also, for all the reasons previously discussed, concurred with Dr. Gange's finding that Barnes's mental impairment is not severe and therefore does not significantly interfere with her ability to perform past work.   Indeed, Barnes' own testimony that she has a "fantastic" memory and does not have difficulty concentrating supports this finding.  Thus, the ALJ has substantiated his opinion that Barnes's mental impairments need not limit her to simple tasks.

Finally, we note that the ALJ did not erroneously conclude that Barnes could perform her past work.  The VE specifically classified Barnes' past positions of secretary and data entry

17

operator as sedentary positions.  Moreover, Barnes herself reported that as an administrator, she spent upwards of six hours per day sitting. [Tr. 192].  The VE also testified that Barnes had a number of transferrable skills from her previous work experience to other sedentary jobs.  The ALJ's well-supported RFC allows for Barnes to perform a full range of sedentary work.  A number of Barnes' past positions are classified as sedentary.  Accordingly, the ALJ's determination that Barnes can perform her past work is affirmed.

### III.  CONCLUSION

The ALJ provided legitimate reasons for his opinion, all of which are acceptable forms of evidence.  Even though there may be evidentiary support for an alternative position than the one taken by the ALJ, the ALJ's opinion should be upheld because it is supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).  The ALJ has met this requirement and has supplied logical reasons to support his decision.  This is sufficient.  For these reasons, the final decision of the ALJ is **AFFIRMED**.

**SO ORDERED.**

ENTERED: March 30, 2006

> S/ Philip P. Simon  
> PHILIP P. SIMON, JUDGE  
> UNITED STATES DISTRICT COURT